IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | 2:11-CR-0026 |
| REED BECKER BRYANT (1), | § | |
| DANE TAYLOR CLARK (2) | § | |
| CHRISTIAN ALEXANDER WALLSTRUM (3) | § | |

## REPORT AND RECOMMENDATION
## TO DENY DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Before the Court are Motions to Suppress filed by defendants Reed Becker Bryant, Dane Taylor Clark, and Christian Alexander Wallstrum. The instant Report and Recommendation pertains to the Motion to Suppress filed by defendant Wallstrum on August 29, 2011 (document 87). On September 1, 2011, the Court held a hearing on all three motions. Present at the hearing were all three defendants in the above-numbered cause, their attorneys, and counsel for the government. Based on the pleadings filed in relation to the Motion to Suppress and the evidentiary hearing, the undersigned recommends the Motion to Suppress be DENIED.

I.
FACTUAL BACKGROUND

On February 5, 2011, a little after 6:00 p.m., Department of Public Safety (DPS) Trooper Ben Dollar initiated a traffic stop of a white Toyota Camry. The car was driven by defendant Wallstrum. Trooper Dollar testified he observed three vehicles traveling in tandem, going the opposite direction from him. Specifically, the officer observed a SUV, followed by a white Toyota Camry, followed by a silver Ford Fusion. He stated the Camry was following the SUV too closely, and the Fusion

was following the Camry too closely.  Trooper Dollar stopped the Camry while another officer, Trooper Riefers, stopped the Ford, which was occupied by co-defendants Bryant and Clark.

Trooper Dollar testified that upon stopping the Camry, which had Pennsylvania license plates, he exited the patrol car and approached the vehicle from the passenger side.  He identified himself and explained the reason for the stop.  When Trooper Dollar asked if Wallstrum was following the SUV, Wallstrum denied that he was traveling with anyone.  Trooper Dollar asked for the driver's license and the car's registration.  At that time, he noticed on the front passenger seat a hotel receipt for a Gallup, New Mexico hotel.  He also noticed several food and drink containers in the car.  Trooper Dollar indicated he was going to give Wallstrum a warning for following too closely and asked Wallstrum to accompany him back to the patrol car.

Once the two were in the patrol car, Trooper Dollar began running computer checks on the information Wallstrum had given him.  While the computer checks were running, the officer asked Wallstrum questions about his travel.  Wallstrum told Trooper Dollar he had started his trip at Dallas, Texas and then had flown to Oklahoma City and then he was going to North Carolina.  Trooper Dollar found the suspect because both Dallas and Oklahoma City were east of the traffic stop, and Wallstrum was traveling toward the east, so he had to have traveled west at some point.  Upon further questioning, Wallstrum became flustered.  He indicated he had traveled to Amarillo, Texas to see a girlfriend who had sent him a text message asking him to come see her.  Wallstrum said he had then gone from Oklahoma City to Amarillo to see his girlfriend and was, at the time of the stop, leaving from Amarillo to go to North Carolina.  Wallstrum was unable to indicate where in Amarillo his girlfriend lived.  Also during the conversation, Wallstrum stated he was going to go to the Super Bowl in Dallas, Texas.  He then said, however, that he was not going because of the

weather and because of the price of tickets.  When Trooper Dollar asked Wallstrum about the purpose of the trip to North Carolina, Wallstrum indicated he was going to see a girlfriend, but later changed his story to indicate he was going to see a friend.  Wallstrum's changing story about his travel itinerary indicated to Trooper Dollar that Wallstrum was not being truthful.  Additionally, Trooper Dollar asked Wallstrum if Amarillo was as far west as he had traveled.  Wallstrum answered that it was.  This also concerned Trooper Dollar because he remember seeing the receipt in the car for the New Mexico hotel.

Trooper Dollar made other observations while the computer checks were running on the driver and car information.  First, the car was rented.  The rental agreement indicated the rental started on February 1, 2011 in Dallas.  Government's Exhibit 8.  It was to be returned on February 2, 2011 at Oklahoma City.  Defendant was stopped on February 5, 2011.  Therefore, the rental on the car had expired.  Additionally, Trooper Dollar noticed defendant was very nervous.  The officer observed defendant's arms and hands were shaking, his eye was involuntarily twitching, and his carotid artery was visibly pulsing in his neck, indicating a high blood pressure or elevated heart rate. Finally, the magnitude of the food and beverage containers in the car indicated to Trooper Dollar much harder travel than would have been expected by the defendant's story.

At that point, all of the computer checks came back on the driver and vehicle.  Trooper Dollar gave Wallstrum a warning for following too close along with all of Wallstrum's documents. After returning all of the documents to Wallstrum, Trooper Dollar asked if Wallstrum would consent to a search of the car.  Wallstrum consented to the search, telling Trooper Dollar he could search the car "If you feel the need."  Dollar specifically asked for a yes or no as to whether Wallstrum agreed to the search.  Wallstrum said "yes."

Upon initiating his search of the vehicle, Trooper Dollar quickly found several areas where the vehicle had been altered.  The officer noticed the fuel sending unit in the car appeared to have been taken apart.  It also appeared the front bumper and rocker panels had been recently removed.  Trooper Dollar searched the vehicle at the side of the road for approximately thirty minutes.  At that point, the officer approached Wallstrum and indicated he wished to continue the vehicle search at the DPS office.  Wallstrum agreed and followed Trooper Dollar back to the DPS office, where a more extensive search of the vehicle uncovered approximately twenty pound of cocaine.  Defendant later confessed, after twice waiving his *Miranda* rights.  Defendant Wallstrum told officers he met co-defendants Bryant and Clark at the Gallup, New Mexico hotel, and they had instructed him to drive to North Carolina.

II.
DEFENDANT'S CONTENTIONS

Defendant Wallstrum contends:

1.     The initial detention was unlawful.

2.     The consent to search was unconstitutionally obtained.

III.
DISCUSSION

*A.  The Initial Detention*

The Fourth Amendment to the United States Constitution protects individuals from unreasonable search and seizure.  *United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003).  A traffic stop constitutes a seizure under the Fourth Amendment.  *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979).  To determine whether a seizure, including a traffic stop, was reasonable, a reviewing court must consider (1) "whether the officer's action was

justified at its inception," and (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968).

An officer's decision to stop a vehicle for a traffic violation is justified at its inception if he has "objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Banuelos-Romero*, 597 F.3d 763, 766 (5th Cir. 2010) (quoting *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005)). If there was in fact no violation of state law, there is no justification for the stop. *United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998). Such a stop is unconstitutional. *Id.* Thus, "the constitutionality of the officer's stop of [a defendant]'s vehicle must stand or fall based on whether [the defendant] violated Texas law." *Cole*, 444 F.3d at 689.

Section 545.062(a) of the Texas Transportation Code mandates:

> An operator shall, if following another vehicle, maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, the operator can safely stop without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the highway.

Tex. Transp. Code Ann. § 545.062 (Vernon 2011).

In this case, defendant Wallstrum contends the stop was void *ab initio* because he did not commit the offense of following too close, as defined by state law. At the hearing, Trooper Dollar stated he observed the three vehicles "following too close for safety." They were, in his opinion, "clearly" violating the transportation code by following each other too closely. On cross examination during the evidentiary hearing, Trooper Dollar remained steadfast the vehicles were too close to one another. Trooper Dollar failed, however, to indicate the factual basis why he

thought the vehicles were too close together.  The closest Trooper Dollar came to offering a specific articulable fact supporting his opinion was his testimony that the cars were closer to one hundred feet apart from one another.  He testified that he knew what a safe distance was and the distance between the cars was not safe.

The government did not elicit any additional factual detail from Trooper Dollar and the scant testimony does not offer much of a basis justifying the stop.  The better practice would have been for Trooper Dollar to specifically state the facts that allowed him to objectively determine defendant was violating the traffic law.  *See Ford v. State*, 158 S.W.3d 488, 494 (Tex. Crim. App. 2005).  Unlike *Ford*, in this case the Court has the benefit of additional evidence of the traffic violation in the form of the video recording from Trooper Riefers's patrol car.  Both of defendant's experts relied upon this recording when testifying against Trooper Dollar's conclusions, and nothing indicates the Court is not likewise able to consider Trooper Riefers's recording, which offers pertinent evidence, in making a determination regarding Trooper Dollar's stop.

Trooper Riefers's patrol car recording indicates the Camry driven by defendant Wallstrum was not far enough away from the SUV.  The counter included in the recording reveals the Camry violated the well-known "two second rule" as it was traveling behind the SUV.  The time counter on the recording begins when the recording begins and counts every second of the recording.  All parties have referenced and relied upon the times indicated in the recording, and there is nothing before the Court to indicate the counter is inaccurate or unreliable.  That counter shows a SUV to pass in front of a fixed reference point at eleven seconds after the recording began.  At twelve seconds after the counter began, the Camry driven by defendant Wallstrum passes that same reference point.  The counter unquestionably shows the SUV and Camry were not separated by two

seconds.  Thus, defendant violated Texas law.  This evidence, which was admitted at the hearing on the motion to suppress and offered in opposition to Trooper Dollar's testimony, indicates a traffic violation occurred.  Consequently, Trooper Dollar's stop was justified at its inception.  *See Terry*, 392 U.S. at 20, 88 S.Ct. at 1879; *Cole*, 444 F.3d at 689.

### B.  The Consent to Search

Defendant next contends that his consent to search the vehicle was unconstitutionally obtained.  First, defendant's argument is primarily based off of his contention that the stop was void *ab initio* because he committed no traffic offense.  That argument has been discussed above.  Second, the Court has evaluated the circumstances in which the consent was given and concludes the consent was valid.

To determine whether consent was validly given, the reviewing court must determine (1) whether consent was voluntary and (2) whether it was an independent act of free will.  *United States v. Jenson*, 462 F.3d 399, 406 (5th Cir. 2006) (citing *Chavez-Villarreal*, 3 F.3d at 127).

Consent is voluntary if it passes the muster of a six-factor test: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.  *United States v. Kelley*, 981 F.2d 1464, 1470 (5th Cir. 1993).

Consent in this case was voluntarily given.  At the time Trooper Dollar sought consent to search the vehicle, he had returned to defendant all of defendant's documents along with a warning for following too close.  The officer had detained defendant for approximately seven minutes when he asked for consent to search, during which time he was running routine computer checks.  Trooper

Dollar did not act in a coercive fashion.  To the contrary, the officer was very polite and professional throughout the duration of his encounter with defendant.  Likewise, defendant was very cooperative with Trooper Dollar, engaging in friendly conversation with the officer.  From the recording of the encounter, defendant Wallstrum seemed to understand and be able and willing to communicate with Trooper Dollar.  There is no evidence before the Court regarding the defendant's awareness of his right to refuse to consent, although Trooper Dollar testified he did not inform defendant of that right. There is also no evidence before the Court that defendant's education and intelligence were inadequate to allow him to understand the officer's request and the implications of his consent. There is no evidence before the Court regarding defendant's belief that incriminating evidence would be discovered if the vehicle was searched.  The totality of these factors lead the Court to conclude Wallstrum's consent to search was voluntary.  *See Kelley*, 981 F.2d at 1470.

Additionally, the consent was an independent act of free will.  *See Jenson*, 462 F.3d at 406. In determining whether the consent was an independent act of free will, a reviewing court considers "1) the temporal proximity of the illegal conduct and the consent; 2) the presence of intervening circumstances; and 3) the purpose and flagrancy of the initial misconduct." *United States v. Jones*, 234 F.3d 234, 243 (5th Cir. 2000).  To be clear, the Court concludes Trooper Dollar did not engage in any misconduct when requesting consent to search.

Wallstrum gave Trooper Dollar consent to search the vehicle after Trooper Dollar had concluded matters relating to the original traffic offense.  While Wallstrum consented to the search within seconds of Trooper Dollar concluding the traffic stop, the return of Wallstrum's driver's license along with the car's registration papers and the warning clearly signaled the conclusion of the stop and acted as an intervening circumstance.  *See Jenson*, 462 F.3d at 407.  Finally, there was

no evidence indicating any purposeful and flagrant misconduct of Trooper Dollar in detaining Wallstrum. Therefore, the consent was an independent act of free will. *See id.* at 406. Because the extension of the detention was based on defendant's valid consent, no Fourth Amendment violation occurred. *See Brignoni-Ponce*, 422 U.S. at 881-82, 95 S. Ct. at 2580.

Even if defendant's consent to the search was not valid, Trooper Dollar nevertheless had reasonable suspicion upon which to base the continued search. *See Terry*, 392 U.S. at 20, 88 S.Ct. at 1879. Trooper Dollar testified to several factors informing his suspicions defendant was engaging in criminal activity. Among other things, the officer noted (1) Wallstrum's nervousness; (2) the vacillating story on basic elements of Wallstrum's travel itinerary in addition to the clearly inaccurate statement from defendant that the furthest west he had gone was Amarillo when the officer had observe a receipt for a New Mexico hotel in the vehicle;[1] (3) the fact the rental agreement had been expired for three days; (4) the condition of the car's interior, which indicated "hard travel" inconsistent with defendant's story; (5) the close proximity between the cars, indicating Wallstrum was traveling in tandem with at least one other vehicle, which is common in drug trafficking. The totality of these circumstances justified Trooper Riefers's continuance of the search at the DPS office. *See Pack*, 612 F.3d at 361-62. Therefore, even if Wallstrum's consent was invalid, the officer had reasonable suspicion to continue the detention. No violation of the Fourth Amendment occurred. *See Terry*, 392 U.S. at 20, 88 S.Ct. at 1879; *Banuelos-Romero*, 597 F.3d at 768 n.1. Defendant's second ground of error is without merit.

---

[1] Trooper Dollar testified that upon initially approaching the vehicle he observed in the front passenger seat two receipts for two hotel rooms at the New Mexico hotel. On cross-examination, however, evidence was introduced the receipts were perhaps stapled to each other. The Court accepts Trooper Dollar's testimony as true, but the possibility of a potential inaccuracy in the trooper's statements is troubling. Ultimately, whether Trooper Dollar saw just one or both receipts upon initial approach does not impact the case because defendant Wallstrum consented to the search. Even in the reasonable suspicion analysis, the receipts were just one of many factors indicating criminal activity.

IV.

RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Motion to Suppress filed by defendant CHRISTIAN ALEXANDER WALLSTRUM be DENIED.

V.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 9th day of September, 2011.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


\* **NOTICE OF RIGHT TO OBJECT** \*

Any party may object to these proposed findings, conclusions and recommendation. This case is set for docket call on September 19, 2011. Consequently, the time in which to file objections is shortened. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is **on or before 4:30 p.m., Wednesday, September 14, 2011**.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).